[No. 31056. Department One. October 21, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS M. STOCKDALE *et al., Appellants.*[1]

[1]Reported in 210 P. (2d) 686.

*Kern & Dano,* for appellants.

*The Attorney General* and *Lyle L. Iversen, Assistant,* for respondent.

GRADY, J.—The question involved in this appeal is whether the state of Washington acquired a prescriptive title, by adverse possession, to a tract of land in Kittitas county, approximating ten acres in area, being the part of the south half of the northeast quarter of the northeast quarter of section 19, township 17, north range 23, E. W. M., located at the summit of a ridge overlooking the Columbia river.

In 1931, Prof. George F. Beck, instructor at Central Washington College of Education, discovered the petrified trees later to be known as Gingko Forest. The state park committee acquired from Smithson Company, a corporation, an area of land for a state park. When the description of the land was inserted in the deed, the grantor intended to convey, and the grantee intended to acquire, the tract of land in question, but it was not included in the description. We shall refer to this area as the ten-acre tract. No survey was made to determine the exact location of the boundary lines. It was assumed by all parties that the boundary line of the property acquired coincided approximately with the edge of the cliff, but a subsequent survey demonstrated that the legal subdivision line was a short distance from this point. The tract in dispute lies between the true subdivision line and the edge of the cliff.

The deed from the Smithson Company was executed and delivered on September 12, 1935. It was contemplated that the park site would be turned over to the national park service as a national monument. A civilian conservation corps camp had been located at Vantage, and a trail or road was constructed from the public highway to the ten-acre

tract, which is referred to in the record as the hilltop. The national park service later abandoned making the park site a national monument, and in 1937 the area became known as Gingko State Park.

Upon acquiring title, the respondent went into possession of the land described in the deed and the ten-acre tract. During 1936, the respondent constructed a residence for a caretaker, and in 1937, it constructed a museum. One corner of the museum projected across the line onto property described in the deed. The respondent also constructed a laboratory shop, garage, office and storage space, and a glass-enclosed vista room overlooking the Columbia river. A heating plant was installed. A walk was constructed in front of the museum and a guard rail at the edge of the cliff. Later, a water right was acquired from a spring on land belonging to Smithson Company, and a pipeline was constructed to carry water to the hilltop. In addition to the buildings on the top of the bluff, another caretaker's house and museum were constructed near the public highway, and the site became known as the Trailside Museum. In 1938, the park was opened to the public. Exhibits, consisting of petrified wood, Indian relics, etc., were placed in the museum on the hilltop.

About five years after the deed was executed, an employee in the office of the state parks committee, when checking descriptions of state park properties for the purpose of compiling a plat book, found that the national park maps indicated that the boundary line of the ten-acre tract was described by metes and bounds and showed an irregular line around the edge of a bluff, while the deed on record with the commissioner of public lands conveyed only to the subdivision line, which was a straight line westerly about two hundred feet from the line indicated by the national park map. The discrepancy was called to the attention of the park committee. No action was taken by the respondent with reference to this discovery.

In May, 1941, Smithson Company conveyed a large tract of land to appellants, which included the legal subdivision

in which the ten-acre tract was located. The appellants did not know the location of the corners of the various legal subdivisions purchased and assumed that the ten-acre tract was the property of respondent. The appellants had resided at nearby Vantage for a long time. A few days after acquiring their property from Smithson Company, appellants sold and conveyed it to John W. Rumsey. When Rumsey acquired title, he caused a survey to be made and discovered that his deed included the ten-acre tract. There were some negotiations had between Mr. Rumsey and respondent with reference to making some adjustment of title, but their full extent is not disclosed by the record. The record does not indicate that the respondent gave any official recognition of any claim which may have been made by Rumsey, but continued to occupy the ten-acre tract and treat it as a part of the park. The respondent continued to make improvements and had electrical service installed in 1945. About May 1, 1947, appellants purchased from Rumsey record title to land on the hilltop, including the ten-acre tract.

During the war years, public visits to the park materially diminished. Caretakers were employed intermittently, and some of the buildings depreciated and became out of repair. A feeling arose among some state officials and employees that the whole park idea was somewhat visionary and impractical, which was intensified by the fact that the buildings on the hilltop had been constructed upon land to which the respondent had not acquired any conveyance of legal title. After reacquiring title to the ten-acre tract from Rumsey in 1947, appellants did some repair work to the buildings and had some rather indefinite negotiations with respondent with reference to transferring it to the state for a money and land consideration. Nothing resulted from these negotiations.

In February, 1948, appellants entered upon the ten-acre tract, removed household effects of the caretaker from the dwelling house and occupied the same for a few days. As the result of a protest made by one or more state park officials, the appellants vacated the dwelling house, and

shortly thereafter, the action now before the court was commenced. The action took the form of a condemnation suit, but at the trial, the question of title was the only one litigated. At the conclusion of the trial, the court decided that the respondent had acquired title to the ten-acre tract by adverse possession and entered judgment quieting its title to the land.

The doctrine of acquirement of title to real estate by prescription finds expression in Rem. Rev. Stat., § 156 [P.P.C. § 73-3]:

"The period prescribed in the preceding section for the commencement of actions shall be as follows:

"Within ten years,—

"1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises in question within ten years before the commencement of the action."

■ The decisions of this court construing the statute are to the effect that, if the possession be actual and uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith, it is deemed to be adverse, and, if continued for the entire statutory period, ripens into a title to such real estate.

We find it unnecessary to cite or quote from our many cases in support of the foregoing statements of the law, because both parties to this appeal have recognized them in their briefs and arguments before the court. One of our later cases on the subject is *Roesch v. Gerst*, 18 Wn. (2d) 294, 138 P. (2d) 846.

The appellant contends that the evidence is not of the character necessary to establish title by prescription, in that respondent entered into possession of the ten-acre tract under the mistaken belief that it was included in the description of the land conveyed by its deed, and when it discovered the mistake about five years later, it recognized superior title in the record owner of the land, so that the continuity of its adverse possession was broken and its

subsequent possession was not under a claim of right made in good faith and in hostility to the title of the record owner. The appellant contends also that, even though it be determined that respondent had acquired a title by prescription, the area of land must be limited to the part upon which the buildings are located.

If one enters into possession of land with the permission of the owner and continues to recognize his title, or enters under a claim of right or title made in good faith, but at any time during the statutory period recognizes a superior title in the true owner and his continued possession is in subordination to such title, such possession is not regarded as adverse and will not ripen into a title. *Roesch v. Gerst, supra.*

These rules of law are not applicable to the facts as we find them to be. Whatever cessation there may have been in the making of improvements in the park or allowance of depreciation to occur during the ten-year period after possession was taken, does not establish the fact or justify the conclusion of law that the respondent either recognized a superior title or continued in possession in subordination thereto. The negotiations had with a view of perfection of title rather than indulging in litigation, did not operate as an interruption of the adverse possession. *Silverstone v. Hanley,* 55 Wash. 458, 104 Pac. 767.

Much of the evidence relating to failure to make improvements and allowing the buildings to deteriorate and negotiations with reference to perfection of title, related to a period of time subsequent to the ten-year period, and can have no effect upon the rights of the parties. *Mugaas v. Smith,* 33 Wn. (2d) 429, 206 P. (2d) 332.

We do not have a situation where the controversy is whether the one claiming his possession to have been adverse intended to claim only to what was the true line between two tracts of land, although his actual possession extended beyond such line. The respondent at all times intended to claim to the edge of the cliff and the whole area which encompassed the museum site.

■ The purpose for which possession of the ten-acre tract was taken was to construct and maintain a museum and residence of a caretaker, and make such other improvements as were proper and needed to carry out the general park plan of the respondent. When adverse possession is taken and maintained for such purposes, such possession is not only of the area actually occupied by buildings and improvements, but such additional area as the possessor intended to and has occupied and which was reasonably needed to carry out his objective. *Skoog v. Seymour,* 29 Wn. (2d) 355, 187 P. (2d) 304. We agree with the trial court that the area of land on the hilltop to which the respondent makes claim was acquired by it by adverse possession.

In support of the motion for a new trial, appellant filed affidavits. In such a situation, one of the questions the court must determine is whether the result might have been different had the matters and things set forth in the affidavits been before the trier of fact at the trial. The problem is of easier solution if the case has been tried before the court without a jury than if there had been a jury sitting. It concluded that the content of the showing made was not of such a character as to warrant any different conclusion than had been reached. We are in accord with the action of the trial court in denying the motion for a new trial.

The judgment is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.