[No. 32880.   Department Two.   January 13, 1955.]

GERTRUDE NIVEN, *Respondent,* v. DONALD J. SHEEHAN *et al.,*
*Appellants.*[1]

*Edwards E. Merges,* for appellants.

*Newman & Newman,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment
quieting title to a strip of real estate lying along the bound-
ary between respondent's and appellants' properties.  Ap-
pellants claim title to the disputed strip by adverse posses-
sion.

Gertrude Niven is the owner and in possession of the fol-
lowing described real property:

"Lots Five (5) and Six (6), Block Sixty-one (61), Sup-
plemental plat WOODLAND PARK, as recorded in Volume 5,
Page 19, King County Plats, located in City of Seattle, King
County, Washington, consisting of a plot 100'x 50'."

Donald J. Sheehan and wife are the owners and in pos-
session of the following described property:

"Lots Nine (9) and Ten (10), Block Sixty-one (61), Sup-
plemental plat WOODLAND PARK, as recorded in Volume 5,
Page 19, King County Plats, located in City of Seattle, King
County, Washington."

[1]Reported in 278 P. (2d) 784.

The eastern line of the Niven property coincides with the western line of the Sheehan property.

Mrs. Niven obtained a deed to her property on September 12, 1934. The Sheehans purchased their property from Mr. Sheehan's mother on May 28, 1949. The elder Sheehans purchased the property in 1926 and lived there until the father's death. Mrs. Sheehan continued to occupy the premises until she sold to her son in 1949.

The properties are divided by a concrete bulkhead and rockery. The structure was there when the elder Sheehans acquired the property in 1926. Mrs. Margaret C. Sheehan, Donald's mother, testified that when they purchased the property there was a wall and a bulkhead dividing it from the property now owned by Mrs. Niven; that they used the property as their own up to the bulkhead and rockery for twenty-four years.

Donald Sheehan testified that he was six years old when they moved onto the property; that his family occupied it up to the rockery; that he worked in the yard up to the rockery; that, in so doing, he never went on Mrs. Niven's property; that he always stayed on his own property. Mrs. Niven testified that when she bought the property there was a property line marker on her side of the wall; that, up until starting this suit, it was her understanding that the bulkhead and rockery formed the actual boundary between the two properties.

In 1950, a heavy rainstorm caused some of the rocks to become loose and fall onto Mrs. Niven's property. The Sheehans caused the rockery to be rebuilt. They testified that the new rockery slanted toward their side, while Mrs. Niven testified that it slanted a few inches toward her side. The trial court made no finding as to this particular issue, feeling that it was of no consequence. We agree with him. In addition, we find no credible evidence in the record of a change in position of the bulkhead and rockery since the original construction.

March 15, 1952, Mrs. Niven had a survey made, as a result of which this action was commenced. The trial court found that the rockery and bulkhead encroached on the Niven

property westerly of the true and exact legal boundary line, with widths varying from nine and one-eighth inches at the north end to eight and three-quarter inches at the south end. Title to the strip in question was quieted in the plaintiff and defendants were ordered to remove the encroaching rockery and bulkhead within thirty days. This appeal follows.

The trial judge was of the opinion that the defendants failed to prove adverse possession. He stated in his oral decision:

"Now the defendant husband, Donald Sheehan, testified the bulkhead and rockery were always there in the same position. 'The rockery and the bulkhead were always on our property'. Well, one does not obtain title to his own property by adverse possession. That is certain. If he thought it was on his own property, he was not encroaching on anybody else's property. He had a right to be on his own property."

He then stated:

"I quote now from the case of *Beck v. Loveland*, 32 [*sic*] [37] Wn. (2d) 258:
" ' "Between the respective owners of these lots from time to time, there was no hostile intent with respect to [the] use of the land." '

"The true rule is this:
" ' "Where neither party intends to claim beyond the true line, possession, up to what is erroneously supposed to be the true dividing line between adjoining properties [*sic*], will not work a disseisin in favor of either of any land occupied by him and under such erroneous belief." ' "

Mr. Sheehan's mother, under cross-examination, testified:

"Q. My question is this: If it had been shown when you bought the property or thereafter that this wall and bulkhead, which you have here described, were on Mrs. Niven's property or over on to her property to some extent, you would have moved it back on your property? You said that you wanted to avoid trouble, didn't you? A. Yes, I did. Q. And wouldn't you have done that? A. No, I wouldn't have done it because I bought it for what it was, and I would not go to work and move the bulkhead. That's the way I bought it.
" . . .
"Well, then, during the time you held that property, it was your opinion that that bulkhead all along there was on

the line? Right? A. I assumed that, yes. It was, I thought. Q. You thought it was on your property? A. Yes. We bought it that way. Q. You didn't consider that it was anything other than a true boundary line between your two properties? A. I thought it was the line and that's the way I bought it. Q. And did you think that Mrs. Niven owned up to the westerly side of that bulkhead? A. We owned up to the bulkhead, was my opinion always, and as I say, we kept the bulkhead up and we kept our yard up to that point, because we thought it was ours. We bought it that way. Q. You thought the bulkhead was right on the line—on your side of the line? A. I certainly did. Q. On your side of the line? Put it that way. A. That's right. I certainly did."

In *Beck v. Loveland,* 37 Wn. (2d) 249, 222 P. (2d) 1066, when the parties built the fence between their properties, it was their understanding that the fence was not accepted as the true dividing line and that, when a correct survey was made, the line established by the survey would be the property line. In that case, neither party was occupying up to the fence under a claim of right.

In the case at bar, both parties and their predecessors in interest recognized the rockery and the bulkhead as the true boundary. Appellants held up to the barrier under a claim of right. They held the disputed strip as owners, and not subservient to the rights of respondent. When property is held continuously during the statutory period of ten years up to a barrier recognized and accepted as the boundary line between it and adjoining property, under a claim of right as owner, although the true line is on the property of the person or persons so holding, that portion between the true line and the recognized barrier is held adversely to the true owner. *Young v. Newbro,* 32 Wn. (2d) 141, 200 P. (2d) 975; *Taylor v. Talmadge,* 45 Wn. (2d) 144, 273 P. (2d) 506; *O'Brien v. Schultz,* 45 Wn. (2d) 769, 278 P. (2d) 322.

The judgment is reversed.

HAMLEY, C. J., DONWORTH, and WEAVER, JJ., concur.