[No. 37864.   Department Two.   June 16, 1966.]

JOHAN B. MAGELSSEN *et al., Respondents,* v. ELZIE B. COX
*et al., Appellants.**

*Alfred McBee,* for appellants.

*Edward D. Jones,* for respondents.

LANGENBACH, J.†—This is an action to quiet title by adverse possession for more than 10 years and to recover damages for trespass. The wives are joined as nominal parties. The court quieted title and awarded damages, and defendants have appealed.

The grandfather of respondent husband (hereinafter referred to as respondent) owned 40 acres of land on Camano Island. He died intestate, leaving six children as heirs. In the probate proceedings, this 40-acre tract was partitioned; respondent's mother received the north one-half and her brother, John, received the south one-half. The boundary line between these tracts was described as follows:

*Reported in 415 P.2d 645.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Beginning at the northwest corner of the northwest quarter of the southwest quarter of section 27, in township 32 north of range 3 east W. M. and running thence south 40 rods more or less to the 1/16th corner of section 27; *thence in a southeasterly direction in a straight line to the southeast corner of the northwest quarter of the southwest quarter of said section 27 . . . .* (Italics ours.)

Respondent received a deed to the northerly one-half from his mother. In April, 1933, he conveyed the east 35 rods of this land to his brother, Magnus, who, in 1959, deeded it to the appellants.

Respondent's uncle John, who had received the south one-half in the original partition, deeded his land in 1929 to one McCarthy, who, in 1930, platted it. Tract A of this plat is the disputed property.

Tract A is an elongated 1½ acres of land south of the straight line (italicized above), which is the southern boundary in the legal description of respondent's property, and north of the north line of the county road built across McCarthy's premises. This county road is curved crossing the northerly part of McCarthy's property; it has one gradual and one quite noticeable bend in it. Tract A is approximately 100 feet wide at its widest point. The following diagram is a rough approximation for the convenience of the reader.

The testimony showed the source and descent of these various properties. There was testimony by various witnesses that there was a fence through the trees along the north side of the county road which had been considered as the boundary line between these two partitioned pieces of property. This fence had been built along the county road about 1904.

Respondent testified that when McCarthy tried to sell Tract A to him in 1931, he consulted a lawyer and then advised McCarthy that he had nothing to sell.

In 1962, McCarthy conveyed Tract A to appellants, who tore down respondent's fence and built one of their own. They also bulldozed a road until stopped by court action. The cost of replacing respondent's fence was $39.50.

At the close of the case, the trial court, in its oral opinion, stated the area involved was about 1½ acres of wooded land. Respondent had been in possession for more than 30 years, had enclosed it into his farm within the boundary line fence all of the time. He had used this property in common with his own. Respondent refused to buy it from McCarthy from the start and had informed him that a lawyer said McCarthy had nothing to sell. McCarthy was thus placed on notice that respondent claimed this piece of land. The court did not believe McCarthy's testimony that he had removed wood from Tract A with the use of a power saw and that the possession of respondent was merely permissive.

The trial court's finding of fact No. 4 is as follows:

Such possession by the plaintiff of the aforementioned property has been adverse, actual, uninterrupted, open, notorious, hostile, and exclusive under a claim of right asserted in good faith for a period of at least thirty years prior to the commencement of this action, and they have claimed to own the same against the whole world, including the defendant.

Although appellants have seven assignments of error, they have only one argument: " . . . there was absolutely no evidence upon which the court could possibly bottom a finding of respondent, in good faith believing, he owned the property in question; that, in fact, the evidence

conclusively demonstrated that respondent was continuously aware that he did not own it."

The pertinent statute is RCW 4.16.020, which provides:

The period prescribed in RCW 4.16.010 for the commencement of actions shall be as follows:

Within ten years:

Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action.

In *State v. Stockdale,* 34 Wn.2d 857, 861, 210 P.2d 686 (1949), this court said:

The decisions of this court construing the statute [RCW 4.16.020] are to the effect that, if the possession be actual and uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith, it is deemed to be adverse, and, if continued for the entire statutory period, ripens into a title to such real estate.

Although this court has stated that, under the 10-year statute, the possession in part must be "a claim of right made in good faith" or "a claim made in good faith," we do not mean by "good faith" what appellants contended. A similar argument was advanced in *State v. Stockdale, supra,* where, at 862, the court set forth the general framework of "good faith" in adverse possession:

If one enters into possession of land with the permission of the owner and continues to recognize his title, or enters under a claim of right or title made in good faith, but at any time during the statutory period recognizes a superior title in the true owner and his continued possession is in subordination to such title, such possession is not regarded as adverse and will not ripen into a title.

This rule has no application here, where at no time did the respondent recognize or acknowledge that McCarthy or his grantees, the appellants, had any right, title or interest in any land north of the fence along the county road.

Appellants relied on *Cabe v. Halverson,* 48 Wn.2d 172, 292 P.2d 220 (1956), and *Scott v. Slater,* 42 Wn.2d 366, 255

P.2d 377 (1953). In *Cabe v. Halverson, supra,* after the plaintiff, as adverse claimant, learned that the defendant claimed the land in question, he did not thereafter intend to claim the land as owner. In the case at bar, from the beginning, respondent claimed the land down to the fence north of the county road.

*Scott v. Slater, supra,* is not apposite in that plaintiff claimant did not show exclusive possession as owner. The court said, at 369:

> Both parties used the strip. Defendants entered it when they cultivated, sprayed, and harvested their pears. There was no ouster of defendants from the strip. They did not know, and had no reason to know, that plaintiffs possessed the strip and claimed it as their own.

In *Niven v. Sheehan,* 46 Wn.2d 152, 155, 278 P.2d 784 (1955), (cited in *Cabe, supra*), the court held:

> When property is held continuously during the statutory period of ten years up to a barrier recognized and accepted as the boundary line between it and adjoining property, under a claim of right as owner, although the true line is on the property of the person or persons so holding, that portion between the true line and the recognized barrier is held adversely to the true owner.

This case supported respondent's position, where he and his predecessor in title claimed all of the property north of the fence adjacent to the county road. This claim of possession was stated to the grantor of appellants in 1930 and has been asserted ever since.

In the case at bar, finding of fact No. 4 is supported by the evidence. The trial court's determination on conflicting evidence is decisive; this court cannot substitute its judgment. *Delegan v. White,* 59 Wn.2d 510, 368 P.2d 682 (1962). The evidence supported the allowance of damages for destruction of respondent's fence in the sum of $39.50.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.