JAMES JACOBS et al., Respondents, v. ELIZABETH A. BROCK, as Executrix, Appellant.*

Conniff, Harper & Taylor, by Stanley A. Taylor, for appellant.

Greenwood, Shiers & Kruse, by Leonard W. Kruse, for respondents.

LANGENBACH, J.†—This is an. action brought to recover upon a claim for services rendered a decedent. The claim

*Reported in 437 P.2d 920.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

had been rejected by his estate. This is the second appeal in the same matter.

The record of the first appeal is in *Jacobs v. Brock*, 66 Wn.2d 878, 406 P.2d 17 (1965), where the facts are set out somewhat in detail. The first trial included four claims— one for an alleged agreement to leave plaintiffs-respondents certain property on Lake Crescent; one for an implied contract to pay for services performed; one for an alleged agreement of decedent to leave the wife certain property by will or memorandum attached to it; and one for return of certain personal property left in the Lake Crescent property. The first three claims were dismissed by the court in that proceeding, and appellant conceded the fourth claim.

On the appeal, the court stated at 880:

In November, 1958, during one of Mrs. Jacobs' infrequent visits, she found Dr. Brock recovering from pneumonia and quite ill. Thereafter, and until his death February 7, 1962, she cared for him an average of 4 hours a day. In those 3 years Dr. Brock was racked with illness. He was unable to control his bladder, and in late 1960 he suffered a stroke. In the last year of his life he suffered from diarrhea, and a month before his death he underwent a urinary operation, following which he was bedridden. Mrs. Jacobs provided Dr. Brock intensive care during this month-long period. Among her duties, she was required to give him daily enemas.

Mrs. Jacobs served as Dr. Brock's nurse, housekeeper, and, occasionally, his provider during the 3 years. She did his washing in her own home, a task both monumental and unpleasant considering his elimination difficulties. (He wore diaper-type pads which required frequent changing.) She on occasion purchased food and other items for him with her own funds, prepared his meals, canned food for him, started the furnace, cared for his six cats, kept house, took him on various automobile excursions, shaved him and trimmed his toenails. Dr. Brock requested services by telephone, as often as twice a day.

(These facts were also re-established in the second trial.)

And on page 882, the opinion continued:

In examining the trial court's oral opinion we find nothing that indicates the testimony of the witnesses was disbelieved, or that the trial court weighed the evidence.

To the contrary, it appears the motion for dismissal was granted on the ground that treating the plaintiffs' evidence as true it was insufficient to establish a prima facie case. We thus may review the record to determine whether there is sufficient evidence or reasonable inferences therefrom to establish a prima facie case for plaintiffs. *Richards v. Kuppinger, supra* [46 Wn.2d 62, 278 P.2d 395 (1955)].

The opinion then recited the decisional law applicable to this set of facts.

On the retrial, the court considered the testimony of witnesses concerning the performance of services by respondents and the understanding that respondents were to receive the Lake Crescent property for their services. On that basis, they had not submitted statements or bills to Dr. Brock for payment.

There was testimony on the second trial that the respondent wife had told the appellant, as well as the niece and nephew of Dr. Brock, that she did not want them to think that what she had done for the doctor was for profit. The nephew admitted that she had also told him that she felt they were entitled to the lake property for these services.

At the conclusion of the trial, the court read the stipulated testimony of some witnesses at the first trial and then rendered an oral opinion. In this, it was stated:

They were close to each other. She did do a lot of things for him and he accepted this service. We have to consider his viewpoint largely whether he was the type of man who would accept a substantial amount of very unusual and very difficult service with particular reference to his physical problem and his laundry problem and his condition of being incontinent. Did Dr. Brock expect this woman to do all the things she did for him and not give her anything? I don't think so. I don't think any of us would.

Further:

I think all of us can conclude that the plaintiff in the various things she did, the care she administered the deceased, had a right and did expect to be paid in some

manner, whether it was cash per month, cash at the time of his passing, or the conveyance of the property, nevertheless she was operating on the basis that she expected to be paid; and the other portion of it, did he, the recipient, expect or should he have expected to pay for the services. I can't bring myself to believe that Dr. Brock or any other elderly person in his circumstances would expect or permit anyone to perform a long period of service for him for nothing. I don't think that would be his outlook on life, and I don't think it would be equitable or fair.

The court then entered judgment for plaintiffs for $7,025.60.

There were 10 assignments of error. Three of the assignments dealt with objections to the admission of evidence. It was appellant's contention that it was a violation of the deadman's statute, *infra*, to allow respondent James Jacobs to answer the question: "Why didn't you submit a statement to Dr. Brock?" (Answer: "I was always given the impression we were getting the lake property for looking after him.") RCW 5.60.030 provides:

> [A] party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person . . . .

■ The answer of Mr. Jacobs did not reveal a statement made by decedent nor did it relate to a transaction with decedent. In *In re Wind's Estate*, 27 Wn.2d 421, 426, 178 P.2d 731 (1947), this court stated:

> A transaction within the purview of . . . [RCW 5.60.030], means the doing or performing of some business between parties, or the management of any affair. To be a transaction in such a case, the matter concerning which the testimony is given must involve some act by and between the parties for the benefit or detriment of one or both of the parties. It has been held, and properly so, that the test of transactions with deceased within a statute excluding testimony concerning transactions with deceased, is whether deceased, if living, could contradict the witness of his own knowledge. *Bankers' Trust Co. v. Bank of Rockville Center Trust Co.*, 114 N. J. Eq. 391, 168

Atl. 733, 89 A.L.R. 697; *Bruen v. Spannhake,* 118 N. J. Eq. 134, 178 Atl. 73.

Clearly, Mr. Jacobs' statement of his own feelings or impressions does not come within this definition.

Appellant further objected to the testimony of two persons regarding statements of Dr. Brock that he intended to make a gift of Lake Crescent property to respondents. The basis of her objection was that this testimony was no longer relevant since the claim of gift had been abandoned.

■ The relevancy of evidence is a matter within the discretion of the trial court. *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959). We cannot say that the trial court abused its discretion in light of the fact that Dr. Brock's intent to compensate respondents for their services was a contested matter in this case.

■ In addition, these statements made by Dr. Brock were not barred by RCW 5.60.030 for the reason that they were made to third persons. *Peoples Nat'l Bank v. National Bank of Commerce,* 69 Wn.2d 682, 420 P.2d 208 (1966).

■ Two assignments referred to findings of fact wherein the trial court determined that respondents expected to be paid for their services, and that decedent was not the type of person who would not have paid compensation for the services performed. The court also found the number of hours that respondents performed services and a reasonable rate of compensation. These findings are supported by substantial evidence. The trial court's determination on conflicting evidence is decisive, and this court cannot substitute its judgment for that of the trial court, even if it were of the opinion that the factual dispute should have been resolved the other way. *Delegan v. White,* 59 Wn.2d 510, 368 P.2d 682 (1962).

*Accord: Magelssen v. Cox,* 68 Wn.2d 785, 415 P.2d 645 (1966).

■ The last assignments of error raised the primary question as to whether, under the law, the respondents had established a contract between themselves and the doctor on which their claim might be sustained. These rules of law

were definitely outlined in the prior appeal of *Jacobs v. Brock, supra.* In that opinion, after citing these rules as laid down in *Johnson v. Suddreth's Estate,* 59 Wn.2d 517, 368 P.2d 907 (1962), we said, at 884:

> In *Suddreth, supra,* quoting from *Hardung v. Green, supra* [40 Wn.2d 595, 244 P.2d 1163 (1952)], we stated:
>
> "The general rule seems to be that, in the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services of value for him thereby bargains and by implication agrees to pay for such services. Restatement, Restitution, § 107(2); *Cramer v. Clark,* 121 Wash. 507, 209 Pac. 688, 24 A.L.R. 970."

and, at 885:

> In the instant case, there was a lack of mutuality of benefits. A promise to pay was therefore implied. [Citation omitted.] The evidence in the record further shows that the services were requested, which also raised a promise to pay. *Johnson v. Suddreth's Estate, supra.*

We conclude, as did the trial court, that respondents' evidence satisfied the requirements of the rules set out in the first appeal. The judgment is affirmed.

FINLEY, C. J., ROSELLINI, HALE, and McGOVERN, JJ., concur.

---

April 25, 1968. Petition for rehearing denied.