[No. 2468-1.    Division One.    April 21, 1975.]

EVALYNNE F. LAPPIN, as *Administratrix, Appellant,* v. ROBERT LUCURELL *et al, Respondents.*

*Walsh & Margolis* and *Roger Walsh,* for appellant.

*Guttormsen, Scholfield & Stafford* and *Charles W. Mertel,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

Mr. Clair W. Wilson transferred $16,000 to his niece on April 10, 1970, and thereafter died on October 3, 1971. Suit was brought by the administratrix of Mr. Wilson's estate against the niece and her husband seeking recovery of the $16,000 plus interest.

This litigation was to establish whether the sum of money in question was a loan, in which event it should be repaid to the decedent's estate, or a gift to the niece and therefore hers by right.

The jury returned a verdict for the defendants, finding in effect that the money was a gift to the niece. Plaintiff's

motion for judgment n.o.v. or for a new trial was denied, and a judgment for the defendants was entered on the verdict. It is from that judgment that plaintiff appeals to this court.

Clair Wilson was a seafaring man who resided in Portland, Oregon. Until shortly before his death, he had been a steward on various ships. He had been married and divorced many years prior to the transaction in question. He had one child, a daughter Clarice, who was born of that marriage.

Among Mr. Wilson's relatives was a sister who lived in Seattle and her married daughter, Mr. Wilson's niece. The niece and her husband also resided in Seattle and were in business there.

On April 10, 1970, the niece and her husband traveled to Portland, Oregon where two cashier's checks totaling $16,000 payable to the niece's order were picked up from Mr. Wilson who had drawn them from his savings. Mr. Wilson was at the time approaching retirement age.

A year and a half later, Mr. Wilson died in Portland, Oregon leaving no will. His married daughter, Clarice, was his sole heir. The decedent's former wife, Evalynne F. Lappin, was appointed administratrix of the estate.

The administratrix brought this suit in the superior court of this state for King County against the niece, Lynn Lucurell, and her husband, Robert. The complaint alleged that the $16,000 was a loan from the decedent to the defendants.

There was no promissory note on which to base the estate's claim. Plaintiff's principal evidence consisted of proof that the money was in fact turned over by the decedent to the niece and that early in the preceding month the niece had written the decedent a letter requesting a loan. The niece's letter, introduced into evidence, concerned an opportunity she and her husband had to buy an apartment house and the difficulty that the husband was having in raising the $25,000 down payment needed. In the letter she asked her uncle if he still had "the money you had mentioned on other occassions [sic] and would be willing to loan

us a portion of the needed downpayment [*sic*] ." The plain-tiff testified at the trial that just before Mr. Wilson's death, he had given her the letter.

At the trial defendants testified that by the time the decedent returned from sea and received the niece's letter, the opportunity to buy the apartment house had passed. The defendants also testified that they had in fact received the money and used it partly in their business and partly for personal purposes. The defendants and decedent's sister (the defendant niece's mother) were not permitted to tes-tify in so many words as to what the decedent had told them. They were, however, permitted to testify that it was their feeling and impression that the money was a gift.

There was defense testimony that the relationship be-tween the decedent and his sole heir, his daughter Clarice, was somewhat estranged. There was also countering evi-dence that it was a warm and close relationship.

Defendants testified that when the decedent retired, he planned to come to Seattle and live with his sister, the mother of the defendant niece. As to this, there was like-wise contrary testimony offered by the plaintiff that the decedent had planned to travel after he retired.

No showing was made that the uncle stood in loco paren-tis to the niece.

### Issues

There are five issues for decision.

Issue One. Does the unexplained gratuitous transfer of money from an uncle to a niece raise a presumption that a gift was intended?

Issue Two. Was it prejudicial error to instruct a jury that the law presumes a transfer of money to a niece to be a gift?

Issue Three. Was it correct to instruct the jury that defendants had the burden of proving that the money they received from the decedent was a gift?

Issue Four. Is testimony of interested parties or parties to the record as to their own feelings and impressions within the bar of RCW 5.60.030, the deadman's statute,

when the manner in which such testimony is given makes it clear to the jury what it was that the decedent had said to the parties so testifying or what the transaction with them was?

ISSUE FIVE. Does testimony which indicates what the decedent said to a witness with respect to the transfer of money in question violate the deadman's statute when such testimony is by a witness who is not a party in interest or to the record?

## DECISION

Dean McCormick has aptly said that " 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.' " C. McCormick, *Evidence* § 342, at 802 (2d ed. Cleary 1972). This case requires that we address both presumptions and burden of proof.

ISSUE ONE.

CONCLUSION. The unexplained gratuitous transfer of money from an uncle to a niece does not raise the presumption of a gift.

Presumptions, since they do relate to the common experiences of humankind, can be useful. As our state Supreme Court has put it, they are also "in some areas an almost inpenetrable jungle, in others a mist-laden morass . . ." *Burrier v. Mutual Life Ins. Co.*, 63 Wn.2d 266, 274, 387 P.2d 58 (1963).

In the present case, the trial court instructed the jury that absent any other evidence of intent, money transferred by an uncle to a niece is presumed to be a gift. (Instruction No. 5)[1]

■ The transfer of the cashier's checks occurred in Oregon. The law of that state was not pleaded by either party

---

[1]"You are instructed that a niece is a member of a class deemed to be an object of a deceased person's bounty and, in absence of other evidence of the deceased person's intent, the law presumes a transfer of money solely and only to a niece to be a gift. On the other hand, the presumption will be disregarded, if you believe evidence which you find reasonably tends to prove that the money was given to both defendants or loaned to either or both defendants by the deceased." Instruction No. 5.

so we assume it to be the same as that of this state. RCW 5.24.040; *Granite Equip. Leasing Corp. v. Hutton*, 84 Wn.2d 320, 525 P.2d 223 (1974).

In this state, a gift will ordinarily not be presumed. *In re Estate of Gallinger*, 31 Wn.2d 823, 829, 199 P.2d 575 (1948).

■ Based on the close relationship of the parties, however, a presumption of gift does arise from an unexplained gratuitous transfer of property from husband to wife or parent to child but not as between siblings. 38 C.J.S. *Gifts* § 65e, at 860 (1943); 38 Am. Jur. 2d *Gifts* § 92, at 892 (1968). In this state, for example, it is held that an unexplained transfer of money from parent to child raises the presumption that a gift was intended. *Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.*, 9 Wn. App. 220, 224, 511 P.2d 1360 (1973). It was also held in *Jackson v. Lamar*, 67 Wash. 385, 388, 121 P. 857 (1912), an action for conversion brought by the administrator of an uncle's estate against a nephew, that under the circumstances of that case there was no presumption in favor of a gift.

So far as the record before us reflects, the arguments and authorities presented to the trial court in this regard were almost entirely based on the law relating to purchase money resulting trusts. Purchase money resulting trusts characteristically arise where one person buys property and directs that the conveyance run to another. *See In re Estate of Spadoni*, 71 Wn.2d 820, 822, 430 P.2d 965 (1967). There is a considerable body of law in this state relating to such transactions, including the case relied on by the trial court in giving its instruction on presumption. *In re Estate of Cunningham*, 19 Wn.2d 589, 143 P.2d 852 (1943).

*In re Estate of Cunningham* involved an entirely different kind of transaction from the one in this case. There the uncle purchased land in the name of his nephew. Accordingly, a resulting use to the uncle's estate would have been found to exist even though the property was deeded to the nephew, unless the court could indulge in a presumption that in this situation a gift to the nephew was intended. This a divided court proceeded to do. The case has not since

been cited by our courts as authority for there being a presumption of gift to a nephew, and any such presumption is contrary to the great weight of authority even in purchase money resulting trust cases. G. Bogert, *Trusts & Trustees* § 460, at 616 (2d ed. 1964).

The present case does not involve a purchase money resulting trust situation. The decedent uncle simply transferred a sum of money to his niece for a reason that was unexplained or more properly for a reason that was unexplainable to the jury because of testimonial restrictions imposed by the deadman's statute.

Even if we were to apply trust law, the rule would still be that the unexplained gratuitous transfer of property would raise at most an inference, not a presumption, that a gift was intended. Restatement (Second) of Trusts § 405, at 327 (1959); G. Bogert, *Trusts & Trustees* § 453, at 510 (2d ed. 1964); 5 A. Scott, *The Law of Trusts* § 405, at 3219 (3d ed. 1967).

We hold that where there is an unexplained gratuitous transfer of money from an uncle to a niece, no presumption arises that the money was a gift.

ISSUE Two.

CONCLUSION. It was prejudicial error to instruct the jury that the law presumes that a niece is a member of a class deemed to be an object of a deceased person's bounty and, in the absence of other evidence of the deceased person's intent, the law presumes a transfer of money to the niece to be a gift, because there actually is no such presumption.

We approach the question of whether the instruction on presumption was prejudicial error with full recognition of the inherent problems that exist whenever a trial court instructs on presumptions. As one authority expressed it:

> The baffling nature of the presumption as a tool for the art of thinking bewilders one who searches for a form of phrasing with which to present the notion to a jury.

C. McCormick, *Evidence* § 345, at 825 (2d ed. Cleary 1972).

Considerable scholarly research has been devoted to the subject of instructing a jury on presumptions in the state of

Washington. E. Morgan, *Presumptions*, 12 Wash. L. Rev. 255 (1937); C. McCormick, *What Shall the Trial Judge Tell the Jury About Presumptions?*, 13 Wash. L. Rev. 185 (1938); J. Falknor, *Notes on Presumptions*, 15 Wash. L. Rev. 71 (1940); L. Wiehl, *Instructing a Jury in Washington*, 36 Wash. L. Rev. 378 (1961); G. Stevens, *Pattern Jury Instructions: Some Suggestions on Use & the Problem of Presumptions*, 41 Wash. L. Rev. 282 (1966); 5 R. Meisenholder, Wash. Prac., ch. 32 (1965); WPI 24.00-.05, 6 Wash. Prac. (1967); P. Stritmatter, *Presumptions in the Washington Supreme Court*, 5 Gonzaga L. Rev. 198 (1970). The substantial body of law relating to instructing juries on presumptions cannot be studied without the magnitude of the task done by the Washington Supreme Court Committee on Jury Instructions, chaired by Judge Lloyd L. Wiehl, becoming readily apparent. The committee has condensed the bulk of the law and practice of instructing juries on presumptions into succinct and readily useable form. *See* WPI 24.00-.05, 6 Wash. Prac. (1967).

The instruction given to the jury on presumptions in the present case (*see* note 1, *supra*) was not a pattern jury instruction (WPI) nor, of course, was it required to be. The record amply reflects the conscientious effort of the trial court to draft that instruction so that it would be fair to all parties. We are also acutely aware that historically there has oftentimes been a very hazy distinction between what is merely an inference and what is a presumption. 5 R. Meisenholder, Wash. Prac., *supra*; WPI 24.00, 6 Wash. Prac.

As nebulous as the distinction may occasionally be, inferences are one thing, and presumptions are another. Inferences are logical deductions or conclusions from an established fact. *Fannin v. Roe*, 62 Wn.2d 239, 242, 382 P.2d 264 (1963). Presumptions are assumptions of fact that the law requires to be made from another fact or group of facts found or otherwise established in an action. WPI 24.00, 6 Wash. Prac. and authorities cited therein. Inferences deal with mental processes whereas presumptions deal with legal processes. G. Stevens, *Pattern Jury Instructions:*

*Some Suggestions on Use & the Problem of Presumptions,* 41 Wash. L. Rev. 282, 290 (1966); WPI 24.00, 6 Wash. Prac.

■ Inferences can get a party past a nonsuit, but ordinarily a jury should not be instructed on them. WPI 24.00, 6 Wash. Prac.; L. Wiehl, *Instructing a Jury in Washington,* 36 Wash. L. Rev. 378, 404 (1961). In addition, while trial courts have traditionally been permitted in the proper case to instruct juries on established presumptions, instructing on matters of inference treads dangerously close to commenting on the facts and so invading the province of the jury. C. McCormick, *Evidence* § 345, at 826 (2d ed. Cleary 1972). *See* Const. art. 4, § 16.

Even in those relatively rare cases where jury instructions on inferences have been held proper as, for example, they have sometimes been in res ipsa loquitur cases, they have still had to be given to the jury as *inferences* with the jury being left at liberty to infer or not to infer, rather than being presented as *presumptions. See* L. Wiehl, *Instructing a Jury in Washington, supra* at 387; *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 32, 499 P.2d 1 (1972). *See also Zukowsky v. Brown,* 79 Wn.2d 586, 592, 488 P.2d 269 (1971).

We hold that the instruction to the jury on presumption was error requiring reversal of the case for two reasons.

■ First, when the jury is instructed using the expression "the law presumes" as in this case, the jury can fairly be expected to give that considerable weight. C. McCormick, *Evidence* § 345, at 825 (2d ed. Cleary 1972). It was material and benefited the defendants who prevailed at the trial below and, therefore, is prejudicial unless it affirmatively appears from the record that the error was harmless. *State v. Dunning,* 8 Wn. App. 340, 343, 506 P.2d 321 (1973). To instruct the jury that "the law presumes" with respect to a nonexistent presumption was prejudicial error.

■ Secondly, the plaintiff had the burden of proving that the transfer of money was a loan. For a gift-to-the-defendant presumption to be injected into the case by this

instruction increased the plaintiff's burden. A presumption which imposes a double burden on a party to a lawsuit is ordinarily considered to be prejudicial. *Graving v. Dorn*, 63 Wn.2d 236, 386 P.2d 621 (1963); *Mills v. Pacific County*, 48 Wn.2d 211, 292 P.2d 362 (1956); *Hutton v. Martin*, 41 Wn.2d 780, 252 P.2d 581 (1953). We hold it was prejudicial here.

We are aware that *Burrier v. Mutual Life Ins. Co.*, 63 Wn.2d 266, 387 P.2d 58 (1963) held that an instruction on presumption which imposed an added burden on a party already carrying the burden of proof was not reversible error. In that case, however, the court did so on the basis of the parties to a life insurance policy having contracted with knowledge of the presumption there in question, *i.e.*, the presumption against suicide, a circumstance which is not here involved. In addition, the court in *Burrier* expressed doubt that under the facts of that case, the presumption really added to the insurance company's burden. We have no such doubt here.

Issue Three.

Conclusion. When plaintiff as administratrix sued the defendants on what she claimed was a loan made to them by the decedent before his death, and where there was no real issue other than whether the money was a loan or a gift, it was error to instruct the jury that defendants had the burden of proving that the money was a gift. (Instruction Nos. 3 and 4.)

The trial court instructed the jury that plaintiff had the burden of proving a loan by a preponderance of the evidence and that the defendants had the burden of proving a gift by clear, convincing, strong and satisfactory evidence. Plaintiff's assignment of error with respect to burden of proof is that once the transfer of money from the decedent to the defendant niece was shown, the entire burden of proof should be deemed to have shifted to the defendants to prove that the money had been obtained as a gift. Plaintiff further argues that the burden of going forward with the evidence also shifted to defendants.

Plaintiff cites *Whalen v. Lanier*, 29 Wn.2d 299, 310, 186 P.2d 919 (1947) for the well-recognized proposition that the one asserting a gift usually has the burden of proving it. The court in *Whalen* quoted from 38 C.J.S. *Gifts* § 65b, at 856-58 (1943) as authority for that rule.

■ The rule pertinent to the present case, however, is stated further on in this same section of Corpus Juris Secundum, namely at 38 C.J.S. *Gifts* § 65b, at 858:

> *On the other hand, if defendant merely pleads a denial to a complaint seeking to recover money or property, as in the case of an alleged loan, the burden of proof has been held to rest on plaintiff throughout the trial,* although the burden of the evidence may shift to defendant with respect to his claim of a gift.
>
> A study of the cases holding that the burden is on the donee to prove the gift where he is defending the right thereto has been said to show that there were special circumstances present which gave rise to a situation that required such rule, it being held that in the absence of such special circumstances the general rule in an action to recover the property is that the burden is not on the recipient to prove that it was a gift.

(Italics ours.)

An early case in point is *Payne v. Williams*, 62 Colo. 86, 160 P. 196 (1916). There, as here, one party sued another for repayment of a loan. The defendant admitted receiving the money but took the position that it was a gift. The court held that the burden of proof was on the plaintiff to prove the loan and not on the defendant to prove a gift. The court in *Payne* ruled at page 90:

> The terms "to give" or "to donate" are the precise antithesis of the term "to loan," which latter implies a promise to repay or return. To establish that the money was a gift is to disprove that it was a loan.

The court in *Payne* further ruled at page 91:

> Counsel contend that the burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of such gift. This must be conceded, but cases of this sort relate to title or an interest

therein to specific property. But the rule to be applied to the present case is a very different one in principle.

The question here is not one of title or interest in property. It is simply a question of whether or not the plaintiff loaned or donated, certain sums of money to the defendant, and the plaintiff must sustain the issue he has raised.

*Accord, Krull v. Arman,* 110 Neb. 70, 192 N.W. 961 (1923); *Mace v. Tingey,* 106 Utah 420, 149 P.2d 832 (1944).

The issue in the present case is simply whether the decedent had loaned the defendant niece the money or had given it to her. The special circumstances are not present here that are present in the usual gift case. Here, for example, there are no issues as to delivery, fraud, undue influence, mental incapacity, overreaching by a fiduciary, theft or the like.

We, therefore, hold that the plaintiff having sued defendants to recover the loan has the burden of proving by a fair preponderance of the evidence that there was a loan, and that the defendants do not have the burden of proving that the transfer of money was a gift.

We have held in this case that there is no presumption of a gift favoring the defendant niece. Neither is there a presumption of a loan favoring the plaintiff administratrix. *Krull v. Arman, supra.* There being no presumptions in the case, the "burden of producing evidence" does not shift to the defendants at any time in the sense in which that expression is customarily used. *See Kay v. Occidental Life Ins. Co.,* 28 Wn.2d 300, 302, 183 P.2d 181 (1947). The sole burden of proof was the plaintiff's, and it should have remained so throughout the trial.

The trial court's instructions on burden of proof were, therefore, erroneous. The error, however, was not prejudicial to the plaintiff as claimed in her assignment of error.

ISSUE FOUR.

CONCLUSION. Testimony given on their own behalf by interested parties and parties to the record which either directly or indirectly made it clear to the jury what the

decedent's statements to them were, and what their transaction with the decedent was, is prohibited by the deadman's statute.

As it relates to this case, the deadman's statute bars any party in interest or to the record from testifying in his or her own behalf as to any transaction with, or statement made by, the decedent, Mr. Clair Wilson. RCW 5.60.030.

The defendants were permitted by the court to testify as to their feelings and impressions that the $16,000 was a gift. The plaintiff assigns error to this.

In *Jacobs v. Brock*, 73 Wn.2d 234, 437 P.2d 920 (1968), cited by defendants, it was held that the following question and answer did not violate the deadman's statute:

Question: Why didn't you submit a statement to Dr. Brock?

Answer: I was always given the impression we were getting the lake property for looking after him.

It was there held that a statement by a witness of such personal feeling and impressions was not something which the decedent would have been able to contradict of his own personal knowledge and, therefore, was not barred by the deadman's statute. As the court said in *Jacobs*:

The answer of Mr. Jacobs did not reveal a statement made by decedent nor did it relate to a transaction with decedent.

*Jacobs v. Brock, supra* at 237.

In order to contrast that which was permitted in *Jacobs* with what occurred here, defendants' testimony in their own case must be examined. The niece's husband testified on direct examination concerning their meeting with the decedent as follows:

Q [By Mr. Mertel] Okay. Now, Bob, in the receipt of monies in Portland, I'm going to try and keep my question as the Court has instructed me. I want you to tell the jury with regard to the receipt of these funds, what was your impression *at the time you received the funds from Clair Wilson*? What was your impression regarding the receipt of the funds?

A I can't say what he said. I can only say what my impression—

Q Right. The Court has ruled you can't say what he said but you can testify as to your impression what occurred.

A I want to preface what I am saying by saying that I have been in business in Seattle all my life and that I'm—that this is a sizeable amount of money as far as I was concerned then and now and that when—when I got the money from him I was concerned that there was nothing in writing about this. I was concerned about the manner in which the money was presented to my wife.

THE COURT: The answer should be responsive with regard to feelings and not with regard to anything else.

MR. MERTEL: All right. Very good, your Honor.

THE COURT: Rather than such as documentation or otherwise.

MR. MERTEL: Yes.

MR. WALSH: Your Honor, we have an objection to both the question and the answer.

THE COURT: The objection is overruled.

MR. WALSH: Yes, I'm just making it for the record.

Q (By Mr. Mertel) Limit your response, what was your impression of the giving of the money to you *when it was given to you* in Portland?

A My impression was that it was a gift and if I didn't have that impression I wouldn't be here right now.

(Italics ours.)

After similar preliminaries, the niece testified about the same meeting:

Q (By Mr. Mertel) Okay. You went to the banks. You received some money.

A We went to two banks, yes.

Q Two banks. How were the checks made out?

A To me.

Q To you. Who was the money handed to?

A Me.

Q You. All right. Now, Lynn, without saying who said what and so forth, I want you to tell the jury what was your impression—wait a minute. Hold on. Get the exact question regarding the receipt of the money.

What was your impression *at the time you received the money?*

A Honest to God, the impression was it was a gift.

(Italics ours.)

Plaintiff administratrix brought this suit as an adverse party against the defendants to recover money which the defendants had obtained from the decedent. The defendants stood to gain or lose by the suit so they were parties in interest. *State v. Robbins,* 35 Wn.2d 389, 395, 213 P.2d 310 (1950). They were also parties of record. As such, the defendants were prohibited by the deadman's statute from testifying as to any transaction with the decedent or any statement made to them by the decedent. RCW 5.60.030.

■ The defendants' testimony, and most notably that above quoted, did indirectly that which the statute prohibited them from doing directly. It made clear what the decedent's statements were and what the transaction with him was, and this was error.

Such testimony does not come within the "feelings and impressions" exception to the deadman's statute declared by *Jacobs v. Brock, supra.* It comes squarely within the prohibition of the statute. As held in *Martin v. Shaen,* 26 Wn.2d 346, 353, 173 P.2d 968 (1946) with reference to the deadman's statute:

> The rule is well settled that, under statutes like Rem. Rev. Stat., § 1211, *an adversely interested party cannot testify indirectly to that to which he is prohibited from testifying directly, and thereby create an inference as to what did or did not transpire between himself and the deceased person.*

(Italics ours.) *See also Diel v. Beekman,* 7 Wn. App. 139, 152, 499 P.2d 37 (1972).

Plaintiff directs our attention to the numerous criticisms of this statute. We are mindful of them but are also cognizant of the fact that the statute has not been repealed or superseded by any duly promulgated court rule. As this court has previously held, the principle that legislative expression will not be derogated by judicial interpretation

applies with respect to the deadman's statute. *Diel v. Beekman, supra* at 152.

We have ruled that this case must be reversed on other grounds. It is unlikely that the defendants' testimony violative of the deadman's statute will occur at a retrial. Accordingly, we do not find it necessary to decide whether such error was cured by the court's written instruction as to the nature and effect of the statute (Instruction No. 2), or whether on the other hand, that instruction compounded the error as plaintiff asserts. If the complained of testimony does not recur, such instruction being a cautionary instruction would not have to be given again.

ISSUE FIVE.

CONCLUSION. Testimony by a witness who is not a party in interest or to the record is not barred by the deadman's statute even though such testimony is indicative of what the decedent said about the transfer of the money.

■  Plaintiff also assigns error to testimony of the decedent's sister as indicating what the decedent had told her. Although the sister was the mother of the defendant niece, there is no indication that she would gain or lose from the judgment so she is not a party in interest under the statute. *State v. Robbins, supra.* Neither is she a party of record. Statements made by the decedent to such third persons are not barred from introduction into evidence by the deadman's statute, RCW 5.60.030. *Jacobs v. Brock, supra* at 238.

■  Plaintiff further argues that the sister's testimony was hearsay. No objection having been made on that basis at the time the witness testified, it cannot now be considered. *Wilburn v. Pioneer Mut. Life Ins. Co.,* 8 Wn. App. 616, 618, 508 P.2d 632 (1973). Colloquy between court and counsel in chambers at the outset of the trial is not a substitute for a specific objection stating the ground of the objection.

There was no error as to the sister's testimony.

Judgment is reversed and the case is remanded for a new trial.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied June 11, 1975.

Review denied by Supreme Court September 26, 1975.