[No. 23802-4-III. Division Three. September 14, 2006.]

*In the Matter of the Estate of* CLIFTON EUGENE MILLER, JR.

*John L. McKean*, for appellants.

*Christopher F. Ries* (of *Ries Law Firm*), for respondent.

¶1 Kulik, J. — Clifton Eugene Miller, Jr., died in March 2003, and his wife died a few months later. The Uhlmans, the four children of Mr. Miller's second wife, appeal the trial court's finding of a $57,582.83 loan to Mr. Miller's estate. They assert the money was a gift. Over objection, the court admitted testimony from Mr. Miller's mother and his daughter that the money was a loan, not a gift. We conclude that the mother's testimony was inadmissible under the feelings and impressions exception to the "dead man's statute." However, we agree that the daughter's testimony was admissible. We affirm the trial court's conclusion that there was sufficient evidence to overcome the presumption of a gift.

## FACTS

¶2 Clifton Eugene Miller, Jr., died on March 4, 2003. He was survived by his brother, Bill Miller; his mother, Myrtle W. Miller Oestreich; his daughter, Kristy Jo Freeman; and his second wife, Carmen Miller. Carmen Miller had four children from a previous marriage: Richard, Michael, Tracy, and Mark Uhlman. Carmen Miller died three months after Mr. Miller.

¶3 Mr. Miller executed a will in 1970, while married to his first wife, Madeline Miller. Mr. Miller did not revise his will after he married Carmen Miller. As a result, the omitted spouse statute required his estate to be divided equally, with one half to his daughter, Ms. Freeman, and the other half to the four Uhlmans. RCW 11.12.095.

¶4 Mr. Miller's mother, Ms. Oestreich, acted as appointed personal representative. She filed a creditor's claim against the estate for $290,048.29. She requested reimbursement for unpaid loans of $269,590.64, rent due of $50,400.00, and funeral expenses.

¶5 Because Mr. and Mrs. Miller experienced poor health during their marriage, Ms. Oestreich often paid their monthly living expenses and she regularly transferred funds into Mr. Miller's account. She also paid Mr. Miller's

power, water, phone, insurance, and car payments. Beginning on February 19, 2002, Ms. Oestreich issued four checks to Mr. Miller on which she had written the notation "loan." Report of Proceedings (RP) at 47. Ms. Oestreich also wrote one check to Carmen Miller with the notation "loan." Ex. 3, 4.

¶6 In 1982, Ms. Oestreich bought a house for her son, Mr. Miller. She and her son signed a rental agreement setting rent at $200 per month. Mr. and Mrs. Miller lived in the house for 21 years but never paid any rent.

¶7 The Uhlmans objected to Ms. Oestreich's claim against the estate. They asserted that the monies Ms. Oestreich paid to Mr. Miller were gifts, not loans, and that any testimony to the contrary violated the deadman's statute.

¶8 At the evidentiary hearing, Ms. Oestreich offered the declaration of Mr. Miller's daughter from his first marriage, Ms. Freeman. In this declaration, Ms. Freeman stated that her father told her he intended to repay the loans from his mother. The Uhlmans objected, and the court reserved its ruling. The Uhlmans also objected to Ms. Oestreich's testimony that it was her impression that the money she paid to Mr. Miller was given as loans.

¶9 The court admitted Ms. Oestreich's and Ms. Freeman's declarations. The court found Ms. Oestreich's testimony admissible under the feelings and impressions exception to the deadman's statute. The court determined that Ms. Freeman was not a party in interest because the effect of her testimony would reduce her share of her father's estate. Based on Ms. Oestreich's testimony and Ms. Freeman's declaration, the court determined that the presumption of gift had been overcome in the amount of $57,582.83, including the claim for rent for the six-year statute of limitation period. Specifically, the court approved Ms. Oestreich's creditor's claim for 67 loans made to Mr. Miller in the principal amount of $57,582.83. The court entered findings of fact and conclusions of law and imposed pre-

judgment interest at 12 percent, for an interest total of $21,819.24.

¶10 The Uhlmans appeal.

## STANDARD OF REVIEW

■■ ¶11 When reviewing a trial court's findings of fact and conclusions of law, we review the findings of fact to determine if they are supported by substantial evidence in the record. If such a showing is made, the court must decide whether those findings support the trial court's conclusions of law. *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). Issues of law are reviewed de novo. *Ackley-Bell v. Seattle Sch. Dist. No. 1*, 87 Wn. App. 158, 165, 940 P.2d 685 (1997).

## ANALYSIS

*1. Was Ms. Oestreich's testimony barred by the deadman's statute?*

¶12 The deadman's statute, RCW 5.60.030, reads, in part:

[I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person . . . then *a party in interest* or to the record, *shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.*

(Emphasis added.)

■ ¶13 The purpose of the deadman's statute is to prevent interested parties from giving self-serving testimony about conversations or transactions with the deceased. *McGugart v. Brumback*, 77 Wn.2d 441, 444, 463 P.2d 140 (1969). A "party in interest" is a person who stands to gain or lose by the operation of the action or judgment in question. *Bentzen v. Demmons*, 68 Wn. App. 339, 344, 842 P.2d 1015 (1993). The test for determining whether a wit-

ness's testimony concerns a transaction with a deceased is whether the deceased, if living, could contradict the witness. *Diel v. Beekman,* 7 Wn. App. 139, 152, 499 P.2d 37 (1972). Moreover, a party cannot testify indirectly to create an inference as to what did or did not transpire between the party and the deceased. *Lappin v. Lucurell,* 13 Wn. App. 277, 289-91, 534 P.2d 1038 (1975).

¶14 The Uhlmans contend the court erred by allowing Ms. Oestreich's testimony about her impression that the checks she paid to Mr. Miller were loans. She testified, in part, as follows:

> Q. Mrs. Oestreich, speaking now in terms of your own impression of the checks that you wrote to Clifton, Jr., was it your impression that those checks were loans or gifts?
>
> A. They were loans.
>
> . . . .
>
> Q. Limiting your answer to your own personal impression, when you were writing these checks as set forth in Exhibit 3 to Clifton Miller, Jr., was it your impression that those checks were being made as loans or as gifts?
>
> A. They were loans.

RP at 39, 41.

¶15 Ms. Oestreich's testimony is inadmissible under the deadman's statute because her testimony indirectly seeks to prove the existence of loan transactions between Ms. Oestreich and Mr. Miller. Under the deadman's statute, Ms. Oestreich is barred from testifying directly or indirectly about any loan transaction with Mr. Miller which Mr. Miller, if living, could contradict.

¶16 Relying on *Jacobs v. Brock,* 73 Wn.2d 234, 237-38, 437 P.2d 920 (1968), Ms. Oestreich argues that her testimony is admissible under the feelings and impressions exception to the deadman's statute. An interested person's statement of his or her own personal impression is not testimony concerning a transaction with the deceased person. Consequently, this testimony does not fit within the exceptions to the deadman's statute. *Id.* at 238.

¶17 In *Jacobs*, the testimony was as follows:

[Q:] Why didn't you submit a statement to Dr. Brock?

[A:] I was always given the impression we were getting the lake property for looking after him.

*Id.* at 237. The court found this testimony did not reveal a statement made by the decedent and did not pertain to a transaction with the decedent. *Id.* Instead, the court concluded that the witness made a statement as to his own feelings and impressions that did not fit within the scope of the deadman's statute. *Id.* at 238.

¶18 In contrast to *Jacobs*, *Lappin*, 13 Wn. App. 277, held a witness's impression testimony was barred by the deadman's statute. The witness in *Lappin* testified, in part:

Q (By Mr. Mertel) Limit your response, what was your impression of the giving of the money to you *when it was given to you* in Portland?

A My impression was that it was a gift and if I didn't have that impression I wouldn't be here right now.

*Id.* at 290.

¶19 In *Lappin*, the court concluded that this testimony as to the witness's impressions made it obvious what the decedent's statements were and what the underlying transaction was. *Id.* at 291. Consequently, this testimony was found to fit within the prohibition of the deadman's statute. *Id.*

¶20 Here, the court erred by admitting Ms. Oestreich's testimony as to her impressions concerning her payments to Mr. Miller. Ms. Oestreich's impression testimony made it obvious that she was involved in loan transactions with Mr. Miller. This testimony falls within the ban of the deadman's statute and does not come within the exception for feelings and impressions.

*2. Was Ms. Freeman's declaration barred by the deadman's statute?*

¶21 The omitted spouse statute required that Mr. Miller's estate be divided, with one half going to Ms. Freeman,

Mr. Miller's daughter, and the other half going to the Uhlmans. Because Ms. Freeman is an heir, her share of the estate will be diminished if Ms. Oestreich's claim is approved. Ms. Freeman's declaration was admitted at trial. This declaration read, in part:

5. On numerous occasions, my father advised me that my grandmother, Myrtle Miller Oestreich, was providing him with money as well as paying his bills. My father was always clear in describing these payments from Myrtle Miller Oestreich as loans which he was to repay. My father told me that he intended to repay the loans from my grandmother when his health improved and he found gainful employment.

6. During my conversations with my father he told me that my grandmother gave him loans in the form of cash as well as payment of bills on his behalf including his car payment, his insurance payment, his medical bills and other living expenses.

Clerk's Papers (CP) at 53.

¶22 Under the deadman's statute, a "party in interest" is not allowed "to testify in his or her own behalf" as to any transaction or statement with the deceased. RCW 5.60.030. For purposes of the deadman's statute, a witness is a party in interest if he or she stands to gain or lose from the judgment. *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 935, 640 P.2d 28 (1982). The interest must be a direct and certain interest in the outcome of the proceeding. *Adams Marine Serv., Inc. v. Fishel*, 42 Wn.2d 555, 562, 257 P.2d 203 (1953). To make this determination, the court asks whether the witness will gain or lose by the direct legal operation of the judgment rendered in the litigation at hand. *Id.*

¶23 Ms. Freeman is a party in interest because she is an heir to her father's estate and she stands to gain or lose from the judgment in this action. Significantly, the statute also provides that a party in interest "shall not be admitted to testify in his or her own behalf" as to any

transaction with the deceased. RCW 5.60.030. The question here is whether Ms. Freeman's testimony is inadmissible under the deadman's statute when her testimony is against the interests of the estate but is not made on her own behalf.

¶24 The trial court adopted Ms. Oestreich's argument that the deadman's statute did not exclude Ms. Freeman's declaration because she was testifying on behalf of her grandmother, not herself. The Uhlmans argue that the correct inquiry under the deadman's statute is whether Ms. Freeman's testimony was contrary to the interests of the estate. According to the Uhlmans, if Ms. Freeman's testimony is against the interests of the estate, her testimony is inadmissible under the deadman's statute, regardless of whether she testified on behalf of herself or her grandmother.

¶25 As an heir to the estate, the value of Ms. Freeman's share will be reduced if Ms. Oestreich's claim is successful. Consequently, Ms. Freeman is a party in interest and is offering testimony against the decedent's estate, but she is not making self-serving statements. In other words, Ms. Freeman meets all the requirements set forth in the deadman's statute, except she is not "testifying on her behalf."

¶26 The rules of statutory interpretation require courts to give effect to the legislature's intent and purpose in passing a law. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the plain language of the statute is capable of only one meaning, the legislative intent is apparent and courts will not construe the statute otherwise. *Id.* The word "behalf" is not ambiguous and should be given its ordinary meaning. "Behalf" is defined as "interest, benefit, support." The terms "in behalf of" and "on behalf of" mean "in the interest of," "as the representative of," and "for the benefit of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 198 (1993). Hence, the phrase "on behalf of" requires the witness to testify in his or her interest or for his or her benefit.

¶27 Ms. Freeman's declaration is admissible under the deadman's statute because she is not testifying on her own behalf. The court did not err by admitting her declaration.

### 3. Is the declaration of Ms. Freeman inadmissible hearsay?

¶28 Hearsay is defined in ER 801(c). ER 801(d)(2) excludes the admission by party-opponents from the hearsay definition. "The death of a party-opponent does not affect the admissibility of that party's admissions under Rule 801, but under some circumstances the admissions may be barred by the dead man statute." 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 801.34, at 336 (4th ed. 1999) (footnote omitted).

¶29 The deceased is a party to this lawsuit and his admissions are not inadmissible hearsay pursuant to ER 801(d)(2). Ms. Freeman's declaration is not inadmissible hearsay.

### 4. Did the court err by concluding that the payments from Ms. Oestreich to her son were gifts?

¶30 "[A]n unexplained transfer of money from a parent to a child raises the presumption that a gift was intended which can only be overcome by proof that is certain, definite, reliable and convincing, and leaves no reasonable doubt as to the intention of the parties." *Wakefield v. Wakefield*, 59 Wn.2d 550, 551, 368 P.2d 909 (1962). To overcome this presumption, Ms. Oestreich had to prove "an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced." *Hafer v. Spaeth*, 22 Wn.2d 378, 384, 156 P.2d 408 (1945).

¶31 The trial court concluded that the checks Ms. Oestreich wrote to Mr. Miller bearing the notation "loan" clearly overcame the presumption of gift. The court also

concluded that the other checks and the payments directly to decedent's creditors overcame the presumption of gift. The court noted that: "The testimony of [Ms. Oestreich] *and* the declaration testimony of Kristy Jo Freeman establish that such payments were intended as loans to be repaid by the Decedent." CP at 146 (Conclusion of Law 5) (emphasis added).

¶32 Sufficient evidence supports the conclusion that Ms. Oestreich's payments were loans. First, Mr. Miller made admissions to his daughter that the payments he received from Ms. Oestreich constituted loans that he had to repay. Second, Ms. Freeman's testimony concerning the loans was adverse to her own interest. Third, some checks carried the notation "loan." Fourth, Ms. Oestreich could not write "loan" on checks that went directly to Mr. Miller's creditors.

¶33 We conclude that this evidence is sufficient to establish that the presumption of gift was overcome despite our ruling that Ms. Oestreich's testimony is inadmissible.

¶34 In summary, the trial court erred by admitting Ms. Oestreich's testimony concerning loan transactions with her son. However, the remaining evidence was sufficient to overcome the presumption of gift. Therefore, we affirm the trial court.

SWEENEY, C.J., and BROWN, J., concur.