IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of | No. 88449-2-I |
| DALTON WALL, | |
| Deceased, | DIVISION ONE |
| KAREN PRICE, | UNPUBLISHED OPINION |
| Appellant, | |
| v. | |
| HANNAH STOKES, Administrator of the Estate of Dalton N. Wall, | |
| Respondent. | |

SMITH, J. — In 2003, Mark Wall purchased a house, where he lived with his committed partner, Karin Price, until he died on December 13, 2019. Mark's last will and testament gave the home to his son, Dalton, subject to a life estate in favor of Price provided that she timely paid the taxes, insurance, and maintenance. In June 2023, Dalton executed a personal representative's deed and conveyed the house to himself, asserting that Price failed to meet her obligation and did not pay the required expenses.

In December 2024, Dalton died intestate and the attorney for his estate informed Price that her life estate had lapsed. Price petitioned for an order to invalidate deed and effectuate testator's intent re: life estate in the probate action for Dalton's estate. The trial court denied Price's petition and dismissed it with

prejudice but preserved Price's right to pursue her committed intimate relationship claim. Price appeals. Finding no error, we affirm.

FACTS

In 2003, Mark Wall purchased a house in Bothell, Washington. Mark[1] and his committed partner, Karin Price, lived in the home. On December 13, 2019, Mark died leaving a last will and testament. Mark's will stated:

> I give, devise, and bequeath my interest in my home. . . to my son, DALTON, subject to a life estate in favor of my girlfriend, KARIN PRICE, provided KARIN timely pays the taxes, insurance, and maintenance on the property and provides DALTON with semiannual (April 30 and October 31) written proof of payment of taxes, insurance, and maintenance; and provided further, in the event KARIN remarries and her new spouse resides with her at my home, then KARIN's life estate shall terminate and shall pass to my son, DALTON, free of any life estate. In the event KARIN fails to timely pay the taxes, insurance, and maintenance on the property, then her life estate shall lapse and all interest in the home shall pass to my son, DALTON, free of any life estate.

Mark named his son, Dalton Wall, the personal representative of his estate. Dalton was granted non-intervention powers to administer Mark's estate. After Mark's death, Price continued to live in the home. Around late 2022 to early 2023, Dalton moved into the home and lived with Price. In June 2023, Dalton executed a personal representative's deed conveying the property to himself. The personal representative's deed stated,

> At that time of this conveyance, KARIN PRICE has not remarried or died, but KARIN PRICE has failed to timely pay the taxes, insurance, and maintenance on the property and has failed to timely provide written proof of payment of taxes, insurance and maintenance. Karin's last payment received toward the taxes was a Five Hundred Dollar and 00/100 ($500.00) payment received on or

---

[1] We refer to Mark Wall and Dalton Wall by their first names solely for the purpose of clarity and to avoid confusion.

> about June 9, 2022. Therefore, under the terms of the Last Will and Testament, the Life Estate of KARIN PRICE is lapsed and all right, title and interest in the real property vests in DALTON N. WALL.

In August 2023, Price received a declaration of completion of probate and notice of filing. In December 2024, Dalton died intestate and his sister, Hannah Stokes, was appointed administrator of Dalton's estate. In January 2025, Dalton's estate sent Price a letter informing Price that her life estate had lapsed. The letter explained that the total property taxes amounted to $26,657.67,[2] and stated that Price only made one payment in 2022.

Price petitioned for an order to invalidate deed and effectuate testator's intent re: life estate in the probate action for Dalton's Estate. The trial court denied Price's petition with prejudice and granted Stokes's motion for summary judgment. In part, the court found that Mark and Price had a committed intimate relationship. The court also found that Price was aware of the terms of Mark's will and the conditions of her life estate. However, since Mark's death in 2019, Price had no written proof that she paid the home's taxes, insurance, or the mortgage, and her life estate lapsed. Price appeals.

ANALYSIS

Legal Principles

When reviewing an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[2] The total property taxes did not include annual insurance costs.

matter of law."  CR 56(c); *see Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).   "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation."  *Ranger Ins. Co.*, 164 Wn.2d at 552.  We view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).  "A moving party is entitled to summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' "  *Berry v. King County*, 19 Wn. App. 2d 583, 587, 501 P.3d 150 (2021) (quoting CR 56(c)).

Dead Man's Statute

Price contends that the court erred in finding that her statements concerning Dalton were barred under the dead man's statute, RCW 5.60.030, because her statements about Dalton were based on her own feelings and impressions.[3]

The dead man's statute prevents admission of self-serving testimony from interested parties "regarding conversations and transactions with the deceased because the dead cannot respond to unfavorable testimony."  *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275 (2013).  "[T]he statute applies only when an

---

[3] Price also asserts that Dalton's text messages are admissible because under *Wildman v. Taylor*, an interested party can introduce "written documentation, executed by the deceased, of a transaction or statement by the deceased."  46 Wn. App. 546, 553, 731 P.2d 541 (1987).  *Wildman* reviewed the admissibility of a written lease agreement and subsequent letters.  46 Wn. App. at 553.  Our court has not found text messages to be legally analogous to written documents.  Dalton's text messages are barred under the dead man's statute.

adverse party sues or defends as a representative or successor of the deceased person." *Parks*, 173 Wn. App. at 375-76. A "party in interest" is a person who stands to gain or lose by the operation of the action or judgment in question. *In re Estate of Miller*, 134 Wn. App. 885, 890, 143 P.3d 315 (2006). Additionally, "a party cannot testify indirectly to create an inference as to what did or did not transpire between the party and the deceased." *Miller*, 134 Wn. App. at 891. However, the dead man's statute does not apply to "[a]n interested person's statement of his or her own personal impression." *Miller*, 134 Wn. App. at 891.

In Price's declaration, she made several statements pertaining to agreements with Dalton:

> Dalton insisted that I not pay the property taxes and insurance on the residence because it was too hard for him to figure out the amount of taxes and insurance included in the monthly mortgage payment. He and I agreed that he would pay the mortgage payments and I would continue to pay all utilities, home maintenance, groceries, and other household necessities like paper towels, cleaning supplies, and toilet paper.

Price also noted, "I have continued to fulfill my obligation to maintain the Residence, consistent with the terms of my life estate and Dalton's agreement to pay the property taxes and insurance with the mortgage payment." Lastly, Price stated: "In the deed, Dalton claims my life estate lapsed because I did not timely pay the taxes, insurance and maintenance on the property. Dalton knew I paid for all the maintenance on the property and that the taxes and insurance were paid with the mortgage payment at his insistence."

Our Supreme Court held that when the declarant makes a statement of personal feelings and it is "not something which the decedent would have been

5

able to contradict of [their] own personal knowledge," the statement is not barred by the dead man's statute. *Lappin v. Lucurell*, 13 Wn. App. 277, 289, 534 P.2d 1038 (1975). In *Jacobs v. Brock*, we found that the statement "I was always given the impression we were getting the lake property for looking after him" was an exception to the dead man's statute because it was not a statement made by the decedent, "nor did it relate to a transaction with decedent." 73 Wn.2d 234, 237, 437 P.2d 920 (1968). Conversely here, Price's statements refer to agreements she made with Dalton and Dalton's personal knowledge. Price claims she relied on the agreement with Dalton to pay for maintenance and repairs instead of her obligated payments. Although Price may have relied on that agreement she believed existed between her and Dalton, the statements are barred by the dead man's statute because they are not statements of her personal impression.[4] We find that the court did not err when it found that Price's statements about Dalton were inadmissible under the dead man's statute.

Constructive Trust

Price contends that the court erred when it declined to give effect to Mark's intent via constructive trust or other equitable remedy.

A court can impose a constructive trust when "a person holding title to property is subject to an equitable duty to convey it to another on the ground that

---

[4] Price also argues that Janet Barron and Amanda Killian are not interested parties with respect to the dead man's statute, and the court erred when it concluded that Barron's and Killian's declarations on Dalton's statements were inadmissible. Price submitted these declarations in support of her position. Because they were in support of Price who is an interested party, the court did not err.

he would be unjustly enriched if he were permitted to retain it." *Proctor v. Forsythe*, 4 Wn. App. 238, 242, 480 P.2d 511 (1971). There must be "clear, cogent, and convincing evidence of the basis for impressing the trust." *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). Constructive trusts are appropriate "when the evidence established the decedent's intent that the legal title holder was not the intended beneficiary." *Baker*, 120 Wn.2d at 548. If the constructive trust is not formed based on evidence of intent, there must be " 'some element of wrongdoing' " to impose a constructive trust. *Baker*, 120 Wn.2d at 548 (quoting *Peste v. Peste*, 1 Wn. App. 19, 23, 459 P.2d 70 (1969)).

In the court's summary judgment order, it held that "there is no equitable estoppel, unjust enrichment or other equitable grounds to establish a constructive trust in this case." Price asserts that the doctrine of equitable estoppel precludes Dalton from asserting a claim because he agreed to pay the taxes and insurance, which Price relied on. However, as discussed *supra*, Price's statements on agreements with Dalton are inadmissible evidence.

Here, Mark's intent in his will was clear: Price was granted a life estate so long as she paid the required taxes, insurance, and maintenance on the house. The trial court found that Price did not produce evidence that she paid the taxes and insurance as required by Mark's will. Pursuant to the language in the will, Price's life estate interest lapsed. Dalton was not unjustly enriched because he was Mark's intended devisee.[5] Mark's intent as expressed in his will was

---

[5] Price contends that the distribution of the house to Dalton's mother is not what Mark intended. We find no error because, even if that is true, Mark

followed; we find the court did not err in denying Price's request for a constructive trust.

Life Estate and Obligation to Pay the Mortgage

Price asserts that the court misinterpreted *Irwin*[6] because it does not always require the holder of a life estate to pay the mortgage.

RCW 11.12.070 states that "[w]hen any real or personal property subject to a mortgage is specifically devised, the devisee shall take such property so devised subject to such mortgage unless the will provides that such mortgage be otherwise paid." Specifically, *Irwin*, as relied on by the trial court, held that "life tenants accept a life estate with all the corresponding burdens associated with the property, viewing the estate as a whole."[7] 10 Wn. App. 2d at 932.

The trial court cited to *Irwin* to support that Price, as a life tenant, had an obligation to pay the mortgage and related house expenses: "Price has failed to provide proof she personally paid the taxes, insurance and the mortgage as required under the *Irwin* case and the clear and unambiguous terms of the Deed." The court's finding did not hold that a life tenant *always* has the obligation to pay the property's mortgage. Rather, *Irwin* found under RCW 11.12.070, when a will does not state who pays the mortgage, the life

_____

intended the house to go to Dalton, and Dalton's mother only received the house as his beneficiary when Dalton passed away.

6 *In re Estate of Irwin*, 10 Wn. App. 2d 924, 450 P.3d 663 (2019).

7 In *Irwin*, our court found that the life tenant was obligated to pay the mortgage when the will stated that the life estate was granted "provided [they] pay[] the taxes and insurance on the property." 10 Wn. App. 2d at 932. The will was silent on who paid the mortgage, stating that the life estate was "provided [the life tenant] pays the taxes and insurance on the property." 10 Wn. App. 2d at 926.

tenant is responsible.[8]  10 Wn. App. 2d at 929.  We find that the court correctly applied *Irwin*.

The evidence supports both Dalton and Price considered that it was Dalton's obligation to pay the mortgage on the house.[9]  But even if Mark's intent was that Price not be responsible for paying the mortgage, Price failed to meet her obligation under the will when she did not pay the taxes and insurance. Therefore, Price's life estate lapsed.

Res Judicata

Price asserts that the court erred when it ruled that the petition she filed in the probate of Dalton's estate to invalidate the deed Dalton obtained as the personal representative of Mark's estate was barred under res judicata.

Res judicata is a question of law that this court reviews de novo. *Scotsman Guide, Inc. v. Simmons*, 35 Wn. App. 2d 203, 209-10, 574 P.3d 584 (2025).

Res judicata, or claim preclusion, applies when a prior judgment bars "litigation of a subsequent claim if the prior judgment has 'a concurrence of identity with [the] subsequent action in (1) subject matter, (2) cause of action,

---

[8] "RCW 11.12.070 provides that '[w]hen any real or personal property subject to a mortgage is specifically devised, the devisee shall take such property so devised subject to such mortgage unless the will provides that such mortgage be otherwise paid.' "  *Irwin*, 10 Wn. App. 2d at 929.

[9] Dalton's personal representative's deed stated, "at the time of this conveyance, Karin Price has not remarried or died, but Karin Price has failed to timely pay the taxes, insurance, and maintenance on the property and has failed to timely provide written proof of payment of taxes, insurance and maintenance." Price's brief supports Dalton's understanding that she was not required to pay the mortgage, "Dalton's death prevented him from continuing to make the mortgage payments, which he always did after his father died."

(3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.' " *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 791-92, 193 P.3d 1077 (2008) (alteration in original) (internal quotation marks omitted) (quoting *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500-01, 130 P.3d 809 (2006)).

Res judicata prevents the court from reviewing a collateral challenge to a judicial order that closes an estate. *Norris v. Norris*, 95 Wn.2d 124, 131-32, 622 P.2d 816 (1980). " 'A decree of distribution stands upon the same footing as any other judgment rendered by a court of general jurisdiction.' " *Norris*, 95 Wn.2d at 131 (quoting *Tacoma Sav. & Loan Ass'n v. Nadham*, 14 Wn.2d 576, 594, 128 P.2d 982 (1942)). Thus, a probate decree is final regarding any claims not raised during probate if the probate decree is not appealed. *See Norris*, 95 Wn.2d at 131-32.

The trial court found: "The probate administration in the Estate of Mark Wall that was completed with a Declaration of Completion filed on August 4, 2023, is res judicata as to the acts of the Personal Representative of the Estate of Mark Wall." Price contends that Dalton breached his fiduciary duty to her because he claimed that Price failed to meet her obligations as a life tenant. Price claims that Dalton signed a factually inaccurate personal representative deed and therefore, the declaration of completion of probate to close Mark's estate should be voided. To address this claim, Price needed to commence an action to reopen Mark's estate given that Dalton's actions were made during the probate administration of Mark's estate. This court cannot address a breach of

10

fiduciary duty claim in Price's TEDRA (Trust and Estate Dispute Resolution Act) petition filed in the probate action for Dalton's estate. Price's arguments regarding Dalton's acts as Mark's personal representative are a collateral claim, and therefore, barred by res judicata.

Even if the court did not find res judicata, reviewed Dalton's actions, and found that Price was entitled to notice from Dalton regarding her lapsed interest, Price did not fulfill the conditions of her life estate. Price admits that she did not pay the taxes and insurance, and though she alleges that she paid an equivalent amount as well as maintenance, no evidence exists that she provided timely documentation to Dalton. We find no error.

## Fees on Appeal

Dalton's estate requests reasonable attorney fees, asserting that Price's appeal was not well supported by the record because Mark's will and deed were clear and unambiguous and Price did not provide evidence of payments. Under RCW 11.96A.150, we may exercise our discretion and order costs or reasonable attorneys' fees as the court determines to be equitable. Price's appeal had merit. We decline to impose fees.

We affirm.

_Smith, J._

WE CONCUR:

_Bowman, J._          _Chung, J._

11